Petitioner v. National Labor Relations Board. Mr. Davenport for the petitioner, Ms. Collins for the respondent. Good morning, Your Honor. Tom Davenport for the petitioner. This case arises under the Levitz standard that was announced by the Board in 2001. It's a very clear standard, very clearly written, purposely written to comply with the Allentown-Mack decision that the Supreme Court had issued just a year or two before. Essentially the decision holds that an employer may withdraw recognition from an incumbent union if it's able to prove an actual loss of majority support at a trial as an affirmative defense by a preponderance of the evidence. The question here is whether the four employee letters, the letters of show that the employees, those four employees did not support the union. As I said before, the company has... What do you mean by did not support the union? I think we need to be a little more precise than that. That they did not want to be represented by the union, Your Honor. And that is ultimately the burden that the company has. Right. And you agree that on their face, the four statements do not establish that, right? Well... Your brief says it's ambiguous whether they do or not, right? Right. I agree that our position is that they're ambiguous. And if it's ambiguous whether they do or not, then it's reasonable for the Board, which is our standard, to have concluded you haven't met your burden approving by a preponderance that they met meant representation rather than membership. Well, actually, in the Board's Wertland decision, Your Honor, the Board said that ambiguous evidence of a loss of support is acceptable. Well, how can that be consistent with your description of Levitt's? That is, if Levitt stands for the proposition that the burden is on you to prove by a preponderance of the evidence that the intention is to eliminate representation, not just membership. And if you agree that this is ambiguous, how do you overcome... First, how do you overcome a preponderance? If it's ambiguous, that means... In fact, your own brief says it could reasonably read either way, right? Well, my brief says that they're ambiguous, and if something is ambiguous, then by definition it's susceptible to more than one meaning. All right. And if it's susceptible to more than one reading, then isn't it reasonable for the Board to say you haven't met your burden of showing that it's more likely than not that it's your meaning? Well, I think that's the ultimate question here. Have we proved what the more reasonable meaning is? I'm asking just on the face of the statements to begin with. If you just read them by themselves, my position is that the more reasonable interpretation of those letters, because I believe they are ambiguous, is that they show that the employees did not support the union. But that's not our standard. Our standard isn't what's the more reasonable. It's whether the Board is reasonable in concluding what's the more reasonable. Right? It's a double. Actually, I think in the Wortland case, the Board specifically said that the standard is which is the more reasonable. That's true. That's the Wortland case, but that is not a decision of this court. We're talking about the standard of review by a court of an agency, not the standard of review of an agency of what happened below the agency. Right? The standard of review for this agency is whether or not the evidence or the decision that the Board made is supported by the evidence, whether there was a rational decision supported by the evidence. Your point is that it's unreasonable for the Board to have concluded that you did not prove that it was more probable than not. Right? That's exactly right. I think it is unreasonable. So you understand then that that's a double test. The Board has to be unreasonable and you have to be reasonable. Right? Well, I think they go hand in hand. What's unreasonable about the Board's... It's unreasonable thinking that you acted unreasonably. What's unreasonable about the Board's construction of the four statements? The first thing that's unreasonable is they've said that an employee who wants to resign from the union can only have one possible reason for doing that, which is to avoid paying dues. That's just simply not true. Board decisions, as we've cited, say that there are many reasons why employees may wish to resign from the union. So the question is, what is this employee's reason? That's not what the Board said. That's what the ALJ said. But the Board's footnote just says, because the statements submitted did not show that they no longer wanted the union to represent them for the purpose of collective bargaining. And they adopt the entire administrative law judge's decision in doing so. In her decision... Well, they explain what they agree with. They say, we agree with the judge that the respondent violates Section 8A because the statements submitted by the employees did not show that they no longer wanted the union to represent them. Right. They agree with the judge. And the judge said that the reason why she concluded that the statements don't show a lack of support is that they can mean only, her words, mean only that the employees wanted to stop paying dues. That's specifically what she held. That's what the ALJ held, not what the Board said, right? Well, no, I disagree. I think the Board adopted, they specifically, expressly adopted the administrative law judge's reasoning for finding that those letters did not show a lack of support. Do you have another argument that that approach is unreasonable because in California that would have been a statement that they want to be fired? Well, and it is. And I think that's the first reason. How does that work? In a union shop, the employer and the union have agreed that all employees have to be members of the union and pay union dues by the 31st day of their employment. And that's perfectly legitimate. We have a union shop here. California is not a right-to-work state where those kinds of agreements are unlawful. Certain states have passed laws that say it's unlawful for employers and unions to agree that employees have to become members of their union. Not in California. So in California, given this collective bargaining agreement, which is a matter of evidence in this case, the employees, if they had intended merely to stop paying dues, would, in effect, be firing themselves. So you're saying that the Board's construction is that these folks were asking to be fired? In effect, that is exactly what happened. Is that an argument you made in your briefs? I'm sorry? Is that an argument you made in your briefs? Yes, it is. It is. We made that both in our opening brief and in our reply brief. Could I just add a little bit of nuance here? There's at least three Supreme Court cases that say, regardless of whether the union security agreement says what you just said, that, in fact, an employee does not have to be a member of a union, even in a non-right-to-work state, and even when there's a union security agreement, right? Right. They just have to pay the union dues. That's right. And, in fact, the Court says, the Board says, in California SAW, that when or before a union seeks to obligate an employee to pay fees and dues under a union security clause, the union should inform the employee he has a right to be or remain a non-member, right? That's true. It's a failure of their duty of fair representation if they don't. That's right. Do you know whether they got back warnings in this case? I have no idea. There's no evidence that they did. And no evidence that they didn't? No. So why shouldn't we assume that the normal rule, which is that employees are advised that they do not have to be members of unions, even in cases of union security agreements, and will not be fired simply for saying, I don't want to be a member of the union, as long as they pay what the Supreme Court has described in Beck and in General Motors as the fiscal core, right? Only the elements necessary to continue collective bargaining, grievance procedures, et cetera. I think the union and the general counsel could have put on that evidence of Beck warnings. If they wanted to at the trial, they didn't. I don't understand why they have to. That's the background understanding of everybody who engages in labor law. I don't understand how that could be. It's you making an argument here to the contrary. And, in fact, the ALJ does say, citing General Motors, membership isn't required. That's true. So the fact that they said, when they say, I do not want to be a member of the union, the board has many cases where they've said that that does not mean that they don't want representation, only that they don't want to be a member of the union. All we're saying here, Your Honor, is that the— Not necessarily. All we're saying here, Your Honor, is that the NLRB reached the conclusion through the ALJ adopted by the board that these letters meant that the employees did not want to pay union dues. And that's the reason why she rejected them as being letters showing their lack of support. We're saying that is an unreasonable and illogical conclusion to reach under the circumstances— Why? Because they would be, in effect, firing themselves. I don't think that it's reasonable to— But they're not, in effect, firing themselves. You agree that they're not, in effect, firing themselves by saying they don't want to be a member of the union. That is not firing yourself, right? If the reason adopted by the—that the ALJ and the board adopted, that they don't want to be members of the union is because they don't want to pay union dues, they would be firing themselves. Again, I guess we may be misinterpreting the board's decision differently. The ALJ, on the same page in which he says what you say, he also says there may be many reasons why somebody doesn't want to be a member of the union. All of which, if you read that footnote, are tied to not paying union dues. Well, it depends on—I mean, there are elements of dues that you have to pay and elements that you don't have to pay, right? The footnote—well, you only have to pay those dues which are required of all members. Right. And so other assessments don't have to be paid. Yes, you don't have to pay the political amounts, et cetera. Right, the pet case. Right. But, Your Honor, if you read the footnote that you're referring to in the ALJ's decision, all of the cases that she cites are cases dealing with employees' reasons why they may not want to pay dues, not reasons why they may not want to be union members. As we pointed out in our reply brief, there are lots of cases showing that employees may not want to be union members for different reasons. For instance, the Cooper case, where employees said that they— Seventh-day Adventist employees said that they—it would violate the tenets of their religion. If we agree with you on that, what happens? This just gets remanded for the board to look at it again? Well, no, I don't think it does because that's why we offer the evidence and why the administrative law judge, for her credit, allowed us to present the employee testimonies so that we wouldn't have to remand to put on further evidence. The evidence there, it's a question of whether it was admissible and relevant or not. If it's admissible and relevant, then there's no question, the ALJ's decision says it, that all of the employees testified that they didn't want to be represented by the union, and that's why they wrote their letters. Well, that seems like a different question. So imagine we were to agree with you that the footnote is wrong, but that it is perfectly all right to say that if you decide not to be a member of the union and not saying you quit and that there are other reasons in addition to or besides dues, then what? Then you have to fall back on your post-withdrawal evidence argument, right? Well, no, because our first argument is that we were offering their testimony to explain their letters, if they're ambiguous. If they're ambiguous, we should be given an opportunity under the proof standard established in Levis to try and prove what the true meaning of those letters was. But in Highland Hospital, we said the board was reasonable in saying you can't do that, right? Well, actually, Highland Hospital, if you read it closely, doesn't quite say. I didn't mean that in a derogatory sense. What I meant was this. There were two types of evidence admitted or considered in the Highland decision. The first was evidence that was allowed and which the board relied on of the employee's intent, both the petitioner-drafter's intent, the person who circulated the petition, as well as some of the employees who signed it, who testified that they believed that the purpose of the petition was merely to get a decertification vote, not to actually get rid of the union. And that evidence was admitted, and the court had no problem with that. It affirmed the NLRB's decision in that regard. The other evidence was that Highland Hospital attempted to introduce evidence of 35 other nurses, five of whom hadn't even signed the petition, who testified that they didn't want to be represented by the union. The five who didn't sign the petition were the ones who were at issue there. And the board ruled, and then the court approved that ruling, that that evidence was not admissible because it was after acquired. We didn't make the distinction you're making now in our opinion, did we? Well, yes, I do believe you did. First, you found that the evidence that the board relied on to find that there was not a lack of support, that evidence showed that the petition was not intended to show lack of support but merely to get a vote. And I think you did rule that in your decision. If you're right on that, doesn't that undermine what Levitz is trying to do? Doesn't that encourage companies to unilaterally withdraw before they have solid evidence and then mine for evidence afterwards? And that's exactly what Levitz is trying to avoid. Well, I don't think that really is what Levitz was trying to avoid. I think Levitz was trying to get away from the situation. Isn't that, in your reading, wouldn't that be the natural result of what happened? It would be an invitation to companies to bet, right? They don't have solid evidence at the time. They unilaterally withdraw, and then they go around to find evidence. Would that happen under your reading? From a practical standpoint, an employer could take that position. Yeah, and they would, and they would. Why would an employer take that position, roll the dice like that? I don't know. Maybe I'm missing that. I'll be honest with you. I don't think an employer would just simply say, let's withdraw recognition, and then go out and try and find some evidence. But I think they always start with some evidence. It's a question of whether it's strong enough evidence when you get to trial. That's exactly what happened here. My client got these letters, read them. Their understanding was that the employees didn't support the union. Why didn't any of these letters say, we don't want the union to support us? None of them say that. They say, I don't want to be a part of the union. Because this is a very uneducated, frankly, workforce, mostly Spanish speakers, very few little English skills. All of them testified, five of them testified they had very little English skills at all. And, you know, so they didn't write what a lawyer would write. No question about that. So if you knew all that, that strikes me as really putting you at enormous risk. You're agreeing that the employer is reading something that says, I don't want to be a member. Knowing that several of the people who wrote that can't even speak English or can't write English and had to be using somebody else. That strikes me as exactly the kind of thing that Levitz was intended to stop. Isn't that right? No, I don't agree. I think Levitz was, the purpose of Levitz was to say, we'll put the employer to proof at trial. That's specifically what they said. Well, Levitz says we don't want people, we don't want employers to just be taking the risk here. We expect that there be actual evidence. And if there isn't, and if they want to take a risk, then they do a representation election. But that they don't just go, you know, hoping to find more evidence when the trial develops. Actually, Levitz does not say that, Your Honor. It never says that we hope they don't go and try and develop more evidence at trial. And, in fact, you have to remember that Levitz was written after a long history of cases dealing with the pre-Levitz rule, the Selenius rule, including the Orion case that I cited to you and the Briggs case that I cited to you and others, which hold where the board specifically held that there's a difference between the actual loss of majority support defense and the good faith doubt defense. And the good faith doubt defense, since it was based upon what the employer understood to be the facts, believed to be the facts at the time of withdrawal, of course, that was dependent upon the evidence that the employer had at that time. But the actual loss of majority support defense, Orion says, is not based on that timing, and that it's evidence which is learned afterwards, which the employer learns of afterwards, can be used at trial to show that there was an actual loss of majority support. It's a higher standard, requires a higher standard of proof, but, nonetheless, a standard of proof that the employer should be given an opportunity to demonstrate at trial. And that is precisely what Orion says. I quoted extensively from the Orion decision. In fact, the board majority took on one of the dissenting members, Kennedy, who believed that after acquired evidence should be allowed both in good faith doubt cases and in actual loss of majority support cases. And the board majority said no, that after acquired evidence is only allowed in the actual loss of majority support cases, not in the good faith doubt cases. And Levitz, the whole purpose of Levitz was to get away from that good faith doubt, what did the employer know at the time that it withdrew recognition, line of thinking, and to say instead that recognition should only be withdrawn if there's actually a loss of majority support. And the employer should be allowed to prove that issue at trial. They've said it many times in the course of their case. They never said in the case that after acquired evidence could not be used. Did they say expressly that you could use after acquired evidence? They didn't say that expressly. They did not say that. They did not even intimate that, that you could or could not. They didn't speak about the type of evidence. They did address that. They did address it, by the way, when they discussed later on in the decision, in the fourth or the fifth part of the decision, because there are various parts, they did discuss, you know, how you, the evidence that would be allowed to prove a good faith doubt to get a representation management, that's the wrong word, an RM election. But they did not discuss the type of evidence that would be allowed for purposes of an actual loss. Can I ask you where in our Highlands Hospital opinion you say that we approve the use of the after acquired evidence for one purpose? Of course. Okay. And I just have a printout of it. I don't have the pagination. All right. Right before Part 3? Is that what you're looking at? It's in Section 1 in the facts, where you discuss the facts. Right. But you said that it's clear that we agreed with the board that they couldn't. The board and the ALJ refused to credit the testimony. For good reason, HRMC had no knowledge of that corroboration evidence on the day it withdrew recognition. So that part's clear. You say there's another part of the opinion where we approved using some after acquired testimony, not just described the facts, but approved it. Your Honor, I apologize. I may have misspoken. You described the facts on which the board based its decision and upheld their decision. Right, except on the precise position that you're talking about, we said we have no need to address that challenge, right? That's at the paragraph. We have one paragraph at the end of Part 2 where we say the board was right not to credit the testimony because the company had no knowledge. The after acquired evidence. That's right. You did. We said we were not addressing that question. No, you did not address it. You found in favor with the board that the after acquired evidence shouldn't have been considered. I agree. I agree with that. That's pretty significant, right? It is significant. With all due respect, you were going to say you disagree with us. I do disagree with you. I have a big problem, right, because we're a panel of the court, and while you may disagree, and maybe even we disagree, we have no power to overturn a previous panel. I don't think you have to reach that issue in this case. I think this case turns on the question of ambiguity and the question of whether or not the employee should be allowed to explain an ambiguity, not after acquired evidence. Remember, the evidence in Highland Hospital that was rejected was evidence of new employees coming forward. That was your distinction. I thought you were drawing based on the board decision. Right. Highland Hospital. It's the difference between the categories of employees. At least that's what I understood you to be saying. Exactly. In Highland, I think the difference between Highland and here is that we didn't bring any new employees forward, didn't bring anything new about, other than the letters, is the only thing that we relied on. We didn't bring any other new evidence about that. The only evidence that we tried to present was to explain what the letters meant. And so that's why I say this case depends on the question of ambiguity. If there's an ambiguity about what those letters meant, then we should have been given an opportunity to explain that. And that isn't the type of after-acquired evidence that the court dealt with in the Highland case. And so I don't think you have to reach that issue. I think you could decide this case in keeping with Highland because in Highland, the NLRB ruled that or allowed the employees to testify about what they meant. Well, you could have done one other thing. In the face of these letters, you could have gone back to the people who wrote the letter and had them be more clear, right? Well, no, you can't do that. Why? Employers can't go to their employees and ask them what the meaning of those letters. That would be a violation of 8A1 of the Act. But you could have asked for a representation election. We could have. Well, we could have asked for a representation election, but we were given an option of doing this. The board doesn't say that we have to do a representation election. But it says it's at your own risk if you don't. It does. It does. And this is the risk that we face. All right. Do we have more questions? Okay, thank you. Thank you. May it please the Court? My name is Valerie Collins, and I represent the National Labor Relations Board. In order for the company to rebut the presumption that the union maintained the support of the majority of the bargaining union employees here, it has to show that the board was incorrect on two crucial points. First, the company has to show that the board was wrong when it held or when it found the statements that are at issue here express the desire to end union membership, not union representation, for the purposes of collective bargaining. And two, the company has to show that the board was wrong when it found that union shop or agency shop provisions like the one we have here do not compel full union membership. As an initial matter, however, the company's interpretation of Levitz is mistaken, in our opinion. Now, prior to Levitz, employers had two avenues that they could pursue in order to lawfully withdraw recognition of an incumbent union. Employers could, one, withdraw recognition and then prove as an affirmative defense that they had a good-faith doubt that the union no longer had the support of the majority of the union members in the bargaining unit. Or two, the employer could have withdrawn recognition and then proven as an affirmative defense that it had actual knowledge that the union no longer had the support of the majority of the employees in the bargaining unit. Now, Levitz changed that landscape. And in Levitz, the board held that an employer can withdraw recognition lawfully only when it can show that at the time that it withdrew recognition, in fact, the union did not have the support of a majority of the bargaining unit employees. And the purpose of Levitz, and it explicitly states thus, is that the board wanted to encourage employers to utilize the RM petition method and wanted to discourage employers to do what was done here in unilaterally withdrawal recognition. And here, the company has just simply failed to make that showing under Levitz. Now, the statements at issue here clearly express a desire, as ALJ found, to end union membership. They say nothing about union representation. Why isn't the more reasonable interpretation of that to, on the question of representation, to think that also indicates a desire not to have the union represent them anymore? The choice is, does that statement indicate that they want the union to represent or not want the union to represent? Well, the statements themselves. Isn't it more reasonable to assume that that statement, I mean, it seems kind of obvious, especially the ALJ's slicing and dicing of the eight statements strikes me as strained at best. Are you nodding your head in agreement with that? No. Oh, no. I'm not. It means a nod in agreement. Do you understand this question? Yeah. Do you understand the question? The ALJ differentiates the statements into two categories, four of which she says these are unambiguous and these are clear and they state a desire to terminate union membership. And then the other four she says, you know, I don't think I need to reach these or address these four statements, but if I did, I think the more reasonable interpretation would be that they no longer want the union to represent them for collective bargaining purposes. Now, going to your question, Judge Kavanaugh, the more reasonable interpretation, in order to get to the argument that the more reasonable representation or the more, excuse me, the more reasonable interpretation must mean that they don't want the union, you have to look at all that after-acquired evidence, and that simply can't come in. No, why? If you look at it, it's over for you. But even if you don't look at it. Well, on the face of the statements, our argument would be, I mean, on the face of the statement, a couple of them expressly state, I don't want to be a union member. And the board has held for more than 40 years that you don't, a statement that states that you don't want to be a union member doesn't mean that you don't want. It doesn't necessarily mean that you don't know one way or the other, but isn't the desire not to be a part of the union logically suggests, if you have to choose, does that logically suggest that you want the union to represent you or logically suggest that you don't want the union to represent you? I think when you do a letter like this or a note like this or a statement like this, it suggests you don't want the union to represent you, doesn't it? There are many reasons why an employee may not want to be a union member. And I think that the court's concern here is if there are all of these different interpretations or maybe they did mean that, maybe they didn't mean that, I think that that just underscores the fact that the employer here, the company, shouldn't have withdrawn recognition. But let's talk about the ALJ's reasoning. The ALJ's reasoning makes no sense here, right? Under the ALJ's interpretation, these folks are saying, I want to be fired, right? The ALJ's interpretation is they're saying, we don't want to pay union dues. Yes. And if they don't pay union dues here, they lose their job, right? So is that a reasonable interpretation? I think it is a reasonable interpretation. The ALJ looked at this and said, well, what they're really saying here is, I want to lose my job. Well, I would disagree with that. Do you think perhaps they didn't know that that would be a consequence of saying? The record is silent as to what the employees knew about, and you're referring to what we would call the back-objector status. As the opposing counsel mentioned earlier, under these types of provisions, under these union shop or agency shop provisions where you have in the contract that union membership is a condition of employment, which I think is what you're referring to, the employer is arguing that because you have such a provision here, the only reasonable meaning of these statements is that the employees wanted to no longer be represented. And that's simply not true because. You don't say the only reasonable. You say the more reasonable. The more reasonable. That's correct. And it's not the more reasonable because what could happen is that these employees can renounce their membership of the union and then become back-objectors in which they pay reduced fees to the union so that the union can, essentially the union is only collecting the fees that are necessary for the representation of the employees in collective bargaining. Do you think that's the more reasonable interpretation of this? I do. I mean, I would say that. And I think it's supported by the evidence here that there's nothing. I mean, I guess it's a separate issue. Well, we know you're wrong because we know what the employees actually intended from their testimony. Well, their testimony, I wouldn't necessarily concede to that. The testimony here, I think the testimony kind of brings up another issue as to why the board, and I believe this court has reinforced this holding, why the board doesn't allow such testimony, in addition to the company not having it at the time of withdrawal, which is a pretty big issue. That's the main issue. There are also some reliability concerns. And so if you have an employee on the stand, practically speaking. So you think they're lying? Well, I don't necessarily think they're lying. Yeah, you are saying they're lying. I'm sorry if I imply that they're lying. You're saying their testimony is not reliable. Well, I think that there are reliability concerns because you have an employer. Based on what? Based on the fact that you have an employer asking their employee on the stand, everyone will know, including the employee full well, that the employer's affirmative defense is going to hinge upon the employee's answer. And you also have, in this situation here, very leading questioning. I mean, the counsel at the hearing asked, you know, what did you mean when you said that you don't want to be a union member? I don't want to be a union member. So when you say reliability, back to Judge Kavanaugh's point, you're saying that there's a good risk they weren't being truthful here, because it's not reliable because it's not truthful. Is that right? Yes. This is based on a long history of board opinions prior to Allentown MAC under the previous standard in which the board has said over and over again that the implicit pressure on the employee in that circumstance to go along with his employer makes that unreliable evidence, right? Absolutely. It's not something you're making up today and saying that they're not being truthful. No. You're relying on a long line of NLRB opinions. Yes. That is precisely correct. So is the standard from Levitz, is the standard what was the employer knew at the time, or what was the actual truth at the time? It is what the employer relied on in submitting. Where does it say that in Levitz? Well, Levitz, there's only, I'm going to have to admit, there's only one place where Levitz expressly states in the text of the decision that it anticipates that employers would be withdrawing recognition on the evidence before the employer, and that's at page 726. Now, evidence before an employer, I mean, that clearly implies that the employer has the evidence. I mean, you can't withdraw recognition on evidence that you don't have. Right, but that goes to, I thought what the board was talking about there, the fear that employers would, in essence, roll the dice, and a rational employer is not going to do that unless it has actual evidence of loss of support before it. I think that's correct. And I think that further this purpose of Levitz supports this interpretation. Levitz was trying to encourage employers, in essence, to kind of not do what was done here. Here, I would argue that this would have been a great situation to petition the board for an RM election, and Levitz was trying to encourage employers to do that. So if you have evidence before you, here it's essentially I would. It doesn't require that, though. It does not require it. And? It doesn't require it, and it also warns employers that if they don't go that route, they're going to be withdrawing at their own peril, and that's what we have here. An employer withdrew at its own peril is not able to prove its affirmative defense under Levitz. The overall goal of this is to preserve employee free choice as well. Absolutely. Absolutely. I mean, the board takes the position that employees should be the ones. I mean, the union is there to represent the employees, so employees are going to be the preferred group of people to essentially hire and fire their unions. And when you have an employer that comes in and says, oh, you know, I'm going to hire and fire your union for you essentially by unilaterally, abruptly cutting off that bargaining relationship, the board thinks it's a disfavored route. Right, but in terms of hiring and firing the union, I'm probably repeating myself here, but these statements certainly look like firing the union from the perspective of the employees. Of the employee. I respectfully would have to disagree. There are two. I resign from the union. Yes. I do not wish to be part of the union. I do not wish to be a union member. I wish to get out of the union. I would like to exit the union. I do not wish to be a part of the union. They didn't rely on all those, did they? I no longer wish to be a part of the union. Well, yes, to clarify, just to be clear, all of the statements that have the part of the union language, the board didn't pass judgment on those. The ALJ did. Exactly. Those are the ones the ALJ said, okay, those would support, if I had to decide, those would support a withdrawal of representation or no longer wanting representation. I was just picking up on your firing the union language because this does seem, I just read, all seem to indicate an employee desire not to have the union. I guess I would just have to respectfully disagree. I think they indicate a desire to no longer be members, and that does not rise to the level under the law that they no longer desire the union there to represent them for collective bargaining purposes. So is it kind of a clear statement rule going forward then for the board? I mean, the board, frankly, the opinion here to do this in this kind of half-baked way of incorporating some of the ALJ stuff is not helpful going forward for employers to know what's going on. But is it your view that there's a clear statement rule that the employee statements have to say, no longer want the union to represent me for the statement kind of magic words thing? Which may be correct, but I'm just curious what you think. Well, just as a disclaimer, I can't, I'm not authorized to kind of predict what the board would hold. But in other circumstances, the board, I don't think there's any magic language, but it has to be objectively clear on the face of the language. So, for example, in Wortland, the petition that the employer had expressly stated that they wanted to remove the union. So objectively clear as opposed to objectively reasonable, for example. Well, under the standard, it has to be the more reasonable interpretation. Right, objectively more likely than not. And here, I think that substantial evidence supports the board's decision that the more reasonable interpretation was essentially the plain language of the statements. That I do not wish to be a union member. I resign from the union. And that those statements indicated a desire to no longer be union members rather than determination. But that is setting it up as a clear statement. Let me just explain why I think that. So the question is, sure, they don't speak to representation.  to make a judgment. What those indicate as to representation. Is it more likely than not that they indicate a desire to continue to be represented or more likely than not they don't indicate a desire to continue to be represented? I understand the court's concern. So, in other words, you're setting it up as they don't speak to representation, therefore they lose. Well, that is a clear statement rule, and that may be right. I don't see that in the board's opinion. But as I understood the law coming in, it was, no, there's not a clear statement rule. If you take what the employee said and you make a judgment as an employer, what's more likely than not the employer's desire as to union representation? And when you see statements like this, it would strike me at least as plausible for an employer to say, having to make an A or B choice on the employee's desire for union representation. And you can't go back to the employees, right? You can't do follow-up interrogation, right? That's correct. Okay. So you have to make a judgment, and it seems plausible, I think. You would. You could. I mean, you don't have to make a judgment. You can see if there's additional, if you have additional evidence. And I think that this- No, but you have to make a judgment one way or another, don't you? Because thinking about the policy, the act of preserving employee free choice, you don't want to make a judgment the wrong way in either direction. Correct? Well, that's correct, and I think you're- when you're the employer, because that would be denying the employees the free choice that the act is supposed to foster. And in that situation, the Levitz decision addresses this scenario directly, because I believe the dissent, that was the dissent's concern. But what the employer can do is at that point file an R.M. petition, and the employer would no longer be in violation of the act if the employer files that R.M. petition. And Levitz expressly states, yes, you have to make a decision. But if you're wrong, you're withdrawing this recognition at your own peril. And here, that's the situation in which we have, in which, unfortunately for the company, their decision to withdraw recognition- But if you're wrong, and then you say, but if you're wrong, you can't look at what the employees actually meant. You can't look at subsequent evidence of the employees' testimony about what they actually meant by an ambiguous statement. I think that's correct, because it wasn't before you. It wasn't before the company when they withdrew recognition. And I think as the court identified, it would kind of open up the door for companies to, it would almost turn the standard not only into pre-Levitz, but almost less than pre-Levitz. Because an employer could withdraw- No, no, no, no, no. It's not less than. I mean, that straights credulity. Because pre-Levitz, you could do it just with a good faith belief. Yes. But here, you would need actual- Here, you would need- It would have to actually be the case that the employees did not support the- But here, you could do it without a good faith belief, without any belief, and then after the fact, marshal up evidence to support that withdrawal. And in that way, that's what I meant in terms of transferring the standard into a pre-Levitz, not only a pre-Levitz, but a more lenient pre-Levitz standard. That would be possible if you agreed with the company's interpretation of Levitz. Under your view, what is the question the company is supposed to ask when they receive statements like this? I think the company has to ask itself, is this objective evidence, does this prove that, in fact, the union, the employees, no longer support the union for collective bargaining purposes? It has to prove or is the question, what's the most reasonable reading of these letters with regard to the issue of representation? It is. It is what is the most reasonable. That's the appropriate question for them to ask. Yes. And here, the statements that you have here, you have statements that say, I don't want to be a union member. And it's simply not the most reasonable interpretation of a statement that's plain on it, that's very clear on its face. What would be another purpose for an employee writing to the employer to say, I don't want to be a union member? I don't know. And the record is silent as to why. Well, the company's position is they looked at that and they reasonably thought that meant these employees do not want the union to represent them. That's a reasonable interpretation, maybe not the only one, but that's a reasonable interpretation, right? That is the company's argument. It has to be the more reasonable, not just the unions. So what is the more reasonable? The more reasonable is what the employees stated, that they no longer wanted to be members of the union. Why would they be communicating that to the employer? The record is silent as to why they, I mean, I think it was in two days, all eight of these statements came to the employer. I don't know what's wrong with that. Just so you have experience, why might an employee write such a letter to the employer? Perhaps to reduce their union dues. The employer would take off less money from their payments if they're not a member than if they are a member. That's exactly correct. So that's one circumstance for why they would be doing that. Can I ask one question? Yes. I'm sorry. Just to be clear, you are not saying that Levitz has been transmitted into a clear statement test because you know that if you did say, give that answer to Judge Kavanaugh, you would be running up against Allentown Mac, right? That's correct. So instead what you're saying, as I understand it, is that the board has long said that if you just say you don't want to be a member, we are going to interpret the more reasonable reading of that, including in union security clause cases, that that is not a statement about representation. It's a statement about membership. That just happens to be the board's view about the words member, just like in lots of other factual cases, the board has to decide what set of facts establish the more reasonable reason. Is that right? That's exactly correct. Has the board ever said that in this context? Has the board ever said that in this context? Not in this case. The board didn't explicitly state it in this case, but it's consistent with board precedent in other areas. That I don't know. I don't know that answer. Yeah. If there are no further questions. I do have a question. In RJB NIS, which they did cite, isn't that, that was a union security clause case, and it was a case in which the employees said they didn't want to be members of the union. Right? Is that right? I'm not familiar. I'd have to look it up. In fact, in that case, they said they'd rather quit than join the union or pay dues. I know that was a pre-Levitz case. Yeah, that was about good faith, reasonable doubt, and they said that didn't even provide good faith, reasonable doubt. All right. Well, it doesn't help any if you don't know. I'm sorry. I apologize. Not a problem. For the foregoing reasons, we would ask that the court deny the company's petition for review and enforce the board's order in full. Thank you. Do we have any time left? All right. We've let everybody go over, so we'll let you go over, too. Two minutes. A couple of points that I wanted to make. One, I don't believe that there is a board precedent ruling that if an employee says that he wants to resign from the union, that that does not mean they do not support the union. There are a lot of negatives in there. Will you say that again? That does not mean what? I don't think that there's a rule that the board's announced in previous cases that when an employee says that they want to resign from the union, it cannot mean that they do not support the union. I know that's a lot of negatives. Right. That's what this case will stand for. Right. That's what this case will stand for. This is a case of first impression. Really? Really, yeah. The board, by footnote, is trying to, yeah. Right. Without real explanation. The cases they're referring to are those Terrell line of cases where they say it doesn't necessarily mean that they don't support the union, or it doesn't certainly mean that they don't support the union, but they don't ever say that it can't mean that. But what about the notion that an employee could, by writing the employer and announcing he or she no longer wants to be part of the union, could be saying something else besides, I don't want the union to represent me. We heard an example. I agree with that. I agree. There could be various reasons for it. That's why we should be given an opportunity to prove what they actually meant. But if we disagreed with you on the after acquired evidence, if all we were to look at is the statements that were supplied, what are we to make of it then? No after acquired evidence. I think you should ask yourself in common parlance, because that's really all the board is doing here, is what's our experience? In common parlance, if you went out in the street and asked people, what does it mean if an employee says he doesn't want to be a member of the union, I would think that 99 percent of them would say it's because the employee doesn't support the union. I think that's the common sense, you know, result that you would reach. That any person on the street would tell you. I think that's a much more reasonable interpretation than saying, oh, they didn't want to pay that little tiny bit of their union dues that they could get out of under the Beck objective type of status, which is what none of the employees out there know about that in reality. We all know that. If we don't know that, why does the Supreme Court have to say this? Why have employees and employers going to the Supreme Court at least three times on this question? This must be a very important question to employers and employees. It is an important question, and it was something that employers and employees had to go to the Supreme Court three times to force unions to do, because the unions don't want employees to know that. And that's the point of those cases. That may be, but it certainly doesn't suggest that that little bit doesn't make any difference. It suggests that that little bit does make quite a lot of difference, doesn't it? It's a good point, Your Honor. And I'm not denigrating Beck objectors' reasons for wanting not to contribute for political causes and so forth. That's important. That is important. I'm not saying that. I'm just saying, if you ask the common man on the street, he'd say that if somebody wants to resign from the union, it's because they don't support the union. And so the board, there is no board. We cited the GNL case to you in our letter brief, the supplemental letter brief, because there's a case just now in the last month where the board has said that evidence of union membership is not evidence of support for a union. So the board recognizes in that context, in the context of initial certification or, you know, an agreement to recognize a union, the fact that employees have signed a membership card doesn't mean they support the union. So membership and support are not coterminous. They don't mean the exact same thing. In this case, I think it's more reasonable to assume that if the board recognizes that membership in a union doesn't mean that you support them, that wanting to not be a member of the union is more likely to mean that you don't support the union. It just sounds like the board thinks that the membership question is ambiguous, and since the burden is on you, that you don't satisfy it just by knowing that membership is not wanted. I think that's our exact point, is that it's ambiguous, and we should be given an opportunity to prove what it meant. That then goes to the after-acquired part, which Judge Griffin asked you to set aside just for the moment. Not really, because I think the after-acquired thing, what you pointed out in Highlands, Your Honor, is that the after-acquired evidence issue really goes to developing brand-new evidence. Well, I looked at Highlands again while we were talking here. There were 35 nurses. Only five of them, the board prevented 35 from testifying, and we affirmed that. Only five of them could be distinguished on the ground that you're making. The other 30 all signed the petition and wanted to explain why, and the board said they couldn't testify either. The board actually, the employees were all allowed to testify in that trial. Unlike our case. We weren't even allowed technically to testify. The board's decision was that it was irrelevant, and we affirmed that. The board's decision was that the five extras were irrelevant. You're right. I agree. I'm just saying the hard question, at least for me, is not the first one, because I think if things are ambiguous, then it goes by the burden of proof. The hard question is what to do about the after-acquired evidence, whether you're permitted to then explain further based on after-acquired. And there the hard question is what to do about Highlands. That is the hard question. I agree. Thank you very much. Thank you very much. Very nice argument on both sides. We'll take the matter under submission.
judges: Garland, Griffith, Kavanaugh